JUDGE PETERS
delivered the opinion oe the court.
This action was brought by appellee, a corporation, against appellant for entering on one fourth of an acre of land adjoining his farm, and which had belonged to Mm, but had been condemned by legal authority for the use of' appellee’s road as a stone-quarry, and removing therefrom a small house which he had erected on said land prior to the judgment of condemnation.
A trial of the action resulted in a verdict and judgment in favor' of appellee; and appellant’s motion for a new trial having been overruled, he has appealed to this court.
On the motion of appellee, -the jury was instructed, in substance, as follows: that the condemnation of the piece of land on which the house was situate, by the Clark County Court, invested appellee with the absolute title to it; and if the jury believed from the evidence that appellee took possession of it after it was condemned, and appellant entered and removed the house while appellee was thus possessed, the law was for it. And refused to give the following instruction asked by appellant: “ That if the jury believe from the evidence that said house was erected on said land, and it belonged to him before and at the time it was condemned for the use of plaintiff as a stone-quarry, and that it was then occupied by defendant’s *673 tenants, and that they continued to occupy it until he removed it, that he had a right to remove it, and is not liable to plaintiff therefor.”
The propriety of giving the instructions asked by appellee, and refusing the one asked by appellant, involves the true construction of the first section and four subsections of chapter 103. (2 Revised Statutes, 436-7.)
Section 1 authorizes incorporated companies, which had then been or might thereafter be incorporated for making a turnpike, graded, or plank-road, to acquire the title by contract to one acre of land adjacent to each mile of such road, in one or more parcels, for the purpose of obtaining materials for the making or repairing of the road, and also one fourth of an acre of land on which to erect a toll-house, for the use of a gate-keeper, wherever a gate is or may be established.
The first subdivision of this section authorizes companies incorporated for said purposes to purchase the necessary rock, gravel, wood, or other material, or the use-of any rock or quan-y for making or repairing their roads; or as an equivalent therefor, in whole or in part, the use of the road, free of toll, may be granted to the owner of the materials for one or more gates, in perpetuity or for a term of years.
The second subdivision provides that when the land or material can not be obtained by private agreement with the owner, the company or the commonwealth may have the same condemned under a writ of ad quod damnum.
The third subdivision grants the right to any such company, and to the commonwealth, to retain any land acquired by them, or either of -them, prior to the passage of said act, whether there was any law authorizing the acquisition of the land or not, and to sell any such land acquired before or after said act to the owner of the *674 adjoining land, but to no other person; and no building shall be erected thereon, nor is it to be otherwise used as a residence for any person except a gatekeeper; and if this provision be violated, the land is forfeited, and the title is to revert to the original proprietor or his heirs.
By subdivision four it is provided that if the commonwealth or any company ceases to keep up the road, any land procured as herein authorized (or, as it should have read, as authorized in the preceding sections) shall revert to the persons from whom it was obtained, or his heirs, saving the rights of creditors.
There is at least an apparent inconsistency or conflict in subdivisions three and four; for if the company is authorized to alienate the lands it may have acquired by purchase, and such as it may have had condemned for the use of its road, and pass the fee-simple estate, then it would be invested with the absolute title by the condemnation under the writ of ad quod damnum, as far as the legislature had the power to divest the owner of the title. And it would scarcely have been worth while to provide for the reverter of the land to the original owner, as the company could always alienate it before it ceased to keep up its road. But if the provisions of subdivision three are construed as applying to lands which the road company or commonwealth may have acquired by contract and purchase from the owner, and thereby become invested with the fee in the land, the two sections will harmonize, and all the provisions be consistent; and that such was the intention of the legislature we can not doubt. The first section authorizes such companies to “ acquire” lands by contract, and the third authorizes the sale of lands thus “acquired,” using the same word in both sections. And there perhaps never would have been any difficulty with regard to these provisions if subsection three had *675 followed subsection one, instead of inserting “No. 2” between them, which provides altogether a different mode of “procuring” the necessary land and materials, and is connected with and belongs to subsection four.
Whether the legislature has the constitutional power to authorize incorporated companies to condemn the land of citizens, the use of which is only needed by such companies, and invest them with the fee-simple title to the land, we do not deem necessary now to express an opinion about, as the question is not before us; for taking subsections two and four of the act under consideration together, which is their natural position, there can not be a doubt that the legislature only authorized such companies in the mode prescribed to procure the use of the' land for the purposes mentioned in the act, the fee still remaining in the original owner of the land; and whenever it would cease to be useful for the enumerated purposes to said company, it would revert to the owner.
The instructions given to the jury by the court below are in conflict with the meaning and proper understanding of this act, and are erroneous.
Wherefore the judgment is reversed, and the cause is remanded for a new trial, and for further proceedings consistent with this opinion.